Rieck Ice Cream Company Appeal.

Argued September 30, 1964. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

reargument refused March 24, 1965.

*John F. Murphy*, Assistant County Solicitor, with him *Francis A. Barry*, First Assistant County Solicitor, and *Maurice Louik*, County Solicitor, for appellant.

*Daniel L. Cohen*, with him *Alexander Cooper*, and *Cooper, Goodman & Schwartz*, for appellee.

Opinion by Mr. Justice Cohen, February 25, 1965:

Rieck Ice Cream Company (Rieck) was the owner of certain property located in the Fifteenth Ward of the City of Pittsburgh, Allegheny County, on January 1, 1960, the beginning of the triennial assessment period

1960, 1961 and 1962. It was notified by the Board of Property Assessment, Appeals and Review of Allegheny County (Board) that for this period the assessed valuation on the property would be $717,555. This represented an increase from the preceding triennium of $191,670, all of which reflected, as specifically shown in the assessment notice, an increase in the assessed value of the main building on the premises. Rieck appealed to the Board for revision, but was refused any relief; and it thereafter appealed to the court below.

At the hearing before the lower court, the Board introduced the assessment and rested. Rieck then produced testimony by an engineer and two real estate appraisers regarding the nature and value of the building[1] which was revalued in the assessment. The gist of their testimony, in toto, was that the building was a special purpose one for the manufacture of ice cream, that no physical changes had taken place from the preceding triennium in the structure, that the market value of the building was between $950,000 and $1,000,000 as compared to the assessed value of $562,350 and that the market value of the only comparable property (another ice cream plant) was between $3,000,000 and $3,300,000 as compared to an assessed value of $988,835.

The court below, relying on the testimony that there had been no change in the building from the preceding triennium and on the testimony regarding the different ratios of assessed to market values between the subject plant and the "comparable" plant, ordered the

---

[1] The testimony should have been directed to the value of the entire property. See *Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Board of Property Assessment*, 417 Pa. 243, 209 A. 2d 394 (1965); *McKnight Shopping Center, Inc. v. Board of Property Assessment*, 417 Pa. 234, 209 A. 2d 389 (1965), and *Sheldon Hotel Corporation Assessment Appeal*, 362 Pa. 313, 66 A. 2d 242 (1949).

assessment on the main building reduced to $450,000. The Board appealed.

Initially, the Board complains that the lower court's reliance on the absence of any physical change in the building from the preceding triennium was erroneous. We agree. The lower court improperly held that appellant met the burden of proof to overcome the presumption of the validity of the assessment of the main building by testimony of a highly competent engineer that there had been no change made in the building from the time of the preceding triennial assessment in the amount of $370,680. This error undoubtedly resulted from its belief that the prior assessment of the building was res judicata on the question of fair market value in the current assessment. While a prior assessment may be admissible for some purposes, we have clearly held it cannot be considered to be res judicata of the current fair market value.

We have held in *Sheldon Hotel Corporation Assessment Appeal*, 362 Pa. 313, 66 A. 2d 242 (1949) : ". . . that a real estate assessment for purposes of taxation for one year is not res judicata of the question of the property's fair market value for assessment purposes for a succeeding or later year. No decision of this State, whereof we are aware, suggests to the contrary; and, certainly, the appellant has cited none. The decisional law of other jurisdictions fully confirms the view we take of the matter.

"In a comprehensive annotation ('Taxes—Res Judicata—Different Periods') reported in 150 A.L.R. 5, the annotator states (p. 79) that 'the weight of authority supports the proposition that the determination of value of property [for tax purposes] on a particular date is not conclusive as to the value of the property on a subsequent date.' Indeed, such authority is now overwhelming. The only States cited where the courts formerly held otherwise were New York and New

Hampshire, and, in the case of each, the respective court of last resort later repudiated its earlier rulings and now holds that an assessment valuation for a particular year is not res judicata of a like question of value for a different year. See People ex rel. Hilton v. Fahrenkopf, 279 N.Y. 49, 17 N.E. 2d 765 (1938), and Winnipiseogee Lake Cotton & Woolen Mfg. Co. v. Laconia, 74 N.H. 82, 65 A. 378 (1906).

"In People ex rel. Hilton v. Fahrenkopf, supra, the New York Court of Appeals, in reversing, said that the view of People ex rel. Warren v. Carter, 119 N.Y. 557, 23 N.E. 926 taken and relied upon by the Appellate Division, involved a 'misconception of the scope of res judicata which should now be removed.' The same learned court then went on to say that 'It is of the essence of an assessment that it fixes value as of a certain time. Each annual proceeding is separate and distinct from every other. Year by year an assessor must use his own judgment and must verify the roll. . . . From these considerations it results that a prior judicial determination of value does not legally bind successor assessors.' The opinion concluded with the statement that 'the doctrine of res judicata can have no true application to the issues of value in recurring assessment proceedings.' The Fahrenkopf case, supra, has since been cited and followed a number of times. See, e.g., People ex rel. N.Y. Cent. R. Co. v. State Tax Commission, 264 App. Div. 80, 35 N.Y.S. 2d 77, 84 (1942), where, upon a successive determination of property assessments for purposes of taxation, it was said that 'The doctrine of res judicata has no application here'; Bellingham Community Hotel, Inc., v. Whatcom County, 12 Wash. 2d 237, 121 P. 2d 335, 337 (1942), where, under a statute providing for real property assessments every even-numbered year, the Supreme Court of Washington held that 'The valuation of appellant's property for the year 1934, as fixed

by the court in the prior action, became the assessed valuation to be used as the basis for tax levies for that year. . . . It did not, however, become the valuation for the year 1936, and as to such year, the former adjudication of value was not binding upon either the county assessor or the trial court in the instant case'; also, Standard Oil Company v. Zangerle, 141 Ohio 505, 49 N.E. 2d 406, 410 (1943), where the Supreme Court of Ohio approved the rule generally followed that 'an assessment fixes value for a definite date or year and . . . is not determinative of or conclusive as to an assessment for a subsequent year.' "

Thus, the issue in an assessment case is what is a proper market valuation and assessment for *this* triennial or taxing period, not for a prior or subsequent period. *Hendel Appeal,* 403 Pa. 635, 170 A. 2d 109 (1961).

The Board also complains that its prima facie case of validity was not overcome by Rieck's valuation testimony because no evidence of value of the building was produced. But this is precisely what Rieck did do; it produced evidence of value by means of expert appraisers who recited the factors considered by them and the values arrived at therefrom. Absent lack of a witness' qualifications, such evidence by means of expert testimony is certainly competent. Its credibility and weight is for the trier of facts to determine; but in the absence of rebuttal testimony, competent evidence from a credible witness cannot be disregarded.

"Where, on appeal, the landowner produces competent and credible testimony to show the real worth, and that the assessment is too high, and this is not met by additional proof on behalf of the county, which relies on the prima facie case made up by the introduction of the valuation fixed by the taxing authorities, the court should accept the uncontradicted evidence, and revise accordingly: Shannopin Coal Co. v.

Greene Co., 280 Pa. 4; Appeal of Penna. Co., Trustee, 282 Pa. 69." *Kaemmerling's Appeal,* 282 Pa. 78, 82, 83, 127 Atl. 439 (1925).

We have also said: ". . . wherever the property has a market value, that value is the test, and the best evidence thereof is the opinions of credible witnesses familiar with such value. . . .

"In tax assessments, as elsewhere, the best evidence available must govern. On the record here presented, the best, and, in fact, only evidence of market value is that of appellant's witnesses, and, under these circumstances, the evidence being worthy of credit, it should have been accepted. See Shannopin Coal Co. v. County of Greene, 280 Pa. 4.

"The trial court erred in holding that the prima facie case made out by the valuation of the board of revision was not overcome by the evidence. The proceedings in the lower court were de novo, and while the assessment of the board of revision made a prima facie case in favor of the (board), it only remained until overcome by evidence, and where, as here, the evidence before the court as to market value is ample and all in conflict with the board's valuation, the court, in the absence of other such evidence, must revalue the property according to the market value established. In tax cases, like all others, courts must be guided by the evidence in determining what are proper valuations. There is in the instant case no finding or even suggestion that appellant's witnesses are not credible." *Kemble's Estate,* 280 Pa. 441, 446, 447, 124 Atl. 694 (1924).

The Board, finally, raises a question about the specific action taken by the lower court, asserting that there was no actual evidence regarding the value of the main building and certainly no evidence to support the specific reduction made by the court. It is true that the record is not perfectly clear in this respect; how-

ever, we believe that the testimony was directed toward achieving reasonable uniformity, not toward determining a market value different from that set forth by the evidence. The court may not disregard competent, credible and unrebutted evidence of market value and set its own market value on a property; it may, however, where the only issue, as here, is uniformity, reduce the assessed value to achieve a ratio to the market value shown by the evidence to be reasonably uniform with other properties in the taxing district.

The confusion in this case illustrates the difficulties which arise when proper procedures are not followed. Despite the fact that the Board's assessment is broken down among the land and the structures thereon, the only basis for an appeal and for a decision thereon is the total assessment. *North Park Village, Inc. v. Board of Property Assessments, Appeals and Review,* 408 Pa. 433, 184 A. 2d 253 (1962); *Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 243, 209 A. 2d 394 (1965). Evidence presented by appraisers must be directed to the market value of the property as a whole. The direction of a statute which requires the assessors to show a separate valuation for the land and for the building is not a directive to a court reviewing an assessment on appeal. Our courts do not act in the capacity of an assessor. The thing from which the property owner appeals and, therefore, the concern before the court is the total assessment of the property as a unit. The itemization of an assessment required of an assessor separately for the land and for the building is but an intermediate step of the ascertainment of the taxable value of the property as a whole. See *Susquehanna Collieries Company's Appeal,* 335 Pa. 337, 341, 6 A. 2d 831 (1939). The matter for review before a court has always been the single assessment for the property as a whole, and it is the court's province and duty to say whether the assessment exceeded

the fair market value of the property or lacked uniformity. *Sheldon Hotel*, supra.

Finally, we call attention to our decisions handed down in *McKnight Shopping Center, Inc. v. Board of Property Assessment*, 417 Pa. 234, 209 A. 2d 389 (1965) and in *Deitch Company v. Board of Property Assessment*, 417 Pa. 213, 209 A. 2d 397 (1965), with regard to the standards involved in disproving (by the owner) or proving (by the taxing authority) uniformity. In the present case, also, we note a confusion in the use of the term "comparable", for the appraisers referred to another ice cream plant as the only "comparable" in considering the uniformity of the ratios of assessed to market values. This, of course, was incorrect; one other property cannot be the "only comparable" when uniformity is in question since the same ratio of assessed to market value must be applied to all real estate in the taxing district.

The order of the court below is vacated and the case remanded for further proceedings consistent herewith.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I would affirm the Order of the Court below for the reasons set forth at length in my dissenting opinions in *Morris v. Bd. of Property Assessment*, 417 Pa. 192, 209 A. 2d 407, and in *Deitch Company v. Bd. of Property Assessment*, 417 Pa. 213, 209 A. 2d 397.

Mr. Justice MUSMANNO joins in this Dissenting Opinion.