Janice I. Savko, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued September 13, 1979, before Judges MENCER, DiSALLE and MACPHAIL, sitting as a panel of three.

*Terry T. Ray,* for appellant.

*Catherine Stewart,* Assistant Attorney General, for appellee.

OPINION BY JUDGE DISALLE, November 2, 1979:

Janice I. Savko (Claimant) appeals here from a decision of the Department of Public Welfare (DPW) discontinuing her welfare benefits. For the reasons set out below, we affirm.

The issue here is whether federal workmen's compensation benefits being paid to a VISTA volunteer on account of a work-related injury are exempt income for purposes of determining eligibility for public assistance benefits. Claimant was injured in an automobile accident in September, 1976, while she worked as a welfare rights worker under the federal VISTA program. Pursuant to Title I of the Domestic Volunteer Service Act of 1973 (Act)[1] Claimant is eligible for workmen's compensation from the federal government, her benefits being computed as if her earnings were the same as a grade GS-7 employe.[2] Before her accident Claimant had been receiving Aid to Families with Dependent Children (AFDC), medical assistance and food stamps[3] despite working full-time as a

---

[1] 42 U.S.C. §4951 (1977).

[2] As of December 8, 1977, she was receiving $664.80 monthly for the duration of her disability.

[3] The AFDC grant for herself and two children was $302.00 monthly. She was also able to purchase $138.00 in food stamps each month at a cost of $58.00.

VISTA volunteer, because payments to VISTA volunteers are expressly exempted by the Act for purposes of calculating public assistance benefits.[4] Once the workmen's compensation benefits were reported, however, DPW notified Claimant that she was no longer eligible for any type of public assistance because these payments were considered income, and were not exempt.

DPW regulations require that all resources available to an individual be considered before eligibility for AFDC is established.[5] United States government employes' disability benefits are specifically *included* resources. Sources of income which are exempt are few in number. These are prescribed by state and federal law and are enumerated in the regulations. Among the exemptions are '' [p]ayments to volunteers under Title I of the Domestic Volunteer Service Act of 1973 . . . . These payments are VISTA . . . .''[6]

Claimant's sole argument on appeal is that the workmen's compensation benefits should be exempt because the purpose served thereby is the same purpose as that for exempting VISTA payments. We disagree. The purpose served by exempting VISTA payments is clearly to encourage low income individuals to volunteer for service in their home communities.[7] VISTA volunteers are required to make a full-time personal commitment of at least one year's service, and to be available for that service on a twenty-four hour basis.[8] Nevertheless, only small stipends payable upon completion of service, and whatever support allowances are necessary to carry out their

---

[4] 42 U.S.C. §5044(g) (1977).

[5] 55 Pa. Code §177.23.

[6] 55 Pa. Code §183.43(1)(xi). This regulation parallels 42 U.S.C. §5044(g).

[7] 42 U.S.C. §4953(b) (1977).

[8] 42 U.S.C. §4954 (1977).

assignments (such as for transportation and supplies), are provided for volunteers.[9] If this meager compensation caused low income volunteers to lose public assistance benefits, few would be recruited. That purpose is nowhere evident in the fiction created by the Act that all VISTA volunteers are deemed to be federal GS-7 employes under the Federal Employees' Compensation Act (Compensation Act).[10] On the contrary, since benefits for disability or death are computed as if the volunteer were earning a GS-7 entrance level salary,[11] it seems clear that one of the purposes of this inclusion in the Compensation Act is to preclude a disabled volunteer from seeking public assistance.

Furthermore, the inclusion of disability benefits as resources for welfare eligibility will not discourage low income individuals from volunteering for service in the VISTA program. Both Section 5055(b) of the Act and Section 8143 of the Compensation Act specify that "compensation for disability shall not begin to accrue until the day following the date on which the injured volunteer is terminated."[12] Therefore, only after termination as a VISTA volunteer may an individual receive these federal disability benefits.

It is well established that duly authorized and promulgated regulations of an administrative agency have the force of law and are binding on the agency and others. *Newport Homes v. Kassab,* 17 Pa. Commonwealth Ct. 317, 332 A.2d 568 (1975). Furthermore, the establishment of these regulations involves agency discretion, and the Court will not disturb administrative discretion in the absence of fraud, bad

---

[9] 42 U.S.C. §4955 (1977). Stipends do not exceed $75.00 per month.

[10] 5 U.S.C. §8101 (1967).

[11] 42 U.S.C. 5055(b) (1977).

[12] *Id.* A similar provision is found in 5 U.S.C. §8143(a) and (b).

172

faith or abuse of power. *Travis v. Department of Public Welfare,* 2 Pa. Commonwealth Ct. 110, 277 A.2d 171 (1971), *aff'd* 445 Pa. 622, 284 A.2d 727 (1971). The scope of review of an administrative regulation is therefore limited to a determination of whether or not there has been a clear abuse of discretion or a clearly arbitrary action. We find no such deficiency here.

Accordingly, we affirm the DPW Order reversing the hearing examiner and thereby discontinuing Claimant's public assistance.

ORDER

AND Now, this 2nd day of November, 1979, the order of the Department of Public Welfare dated April 24, 1978, is hereby affirmed.